UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re: Chapter 11

Oakland Physicians Medical Center, L.L.C., Case Number 24-51134

Debtor. Hon. Mark A. Randon
_______________________________/

**OPINION AND ORDER DISALLOWING AFSCME MICHIGAN 925 LOCAL 100'S CLAIM NUMBER 9**

## I. INTRODUCTION

Oakland Physicians Medical Center, L.L.C. ("Debtor") filed Chapter 11 (Subchapter V) bankruptcy on November 23, 2024. AFSCME Michigan 925 Local 100 ("AFSCME") properly filed proof of claim number 9 seeking $245,000 for "Breach of contract, CBA Violation, unpaid banked time." The affidavit of AFSCME's staff representative and the Official Grievance Form attached to the proof of claim clarify that the request is for a payout of unpaid, accrued banked Combined Time Off ("CTO") for "laid off" AFSCME members. Debtor objects to the proof of claim. The Court heard argument on May 5, 2026, and requested additional briefing that was submitted on July 6, 2026. On July 28, 2026, the Court required further briefing from both parties on the issue of arbitrability of the claim. Debtor submitted a brief on August 27, 2026. AFSCME did not.

Because: (1) there is no right to arbitrate the claim, this Court has the authority to determine whether laid-off employees are entitled to payment of unpaid, accrued banked CTO; (2) section 22.3.7 of the Collective Bargaining Agreement ("CBA") unambiguously applies *only* to employees who leave AFSCME voluntarily—as opposed to those who were laid off; and (3) there is no ambiguity in the CBA that would require an evidentiary hearing, Debtor's objection is **SUSTAINED** and AFSCME's claim number 9 is **DISALLOWED**.[1]

## II. BACKGROUND

AFSCME and Pontiac General Hospital ("Hospital" or "the Hospital") are parties to a CBA. Section 22.1 describes which employees are eligible for CTO:

> All employees who are classified as regular full-time or regular part-time, who work at least 40-59 hours per pay period, shall upon completion of one thousand forty (1,040) regular work hours, be eligible to schedule Combined Time Off (CTO) time with pay.

Once eligible, section 22.3.7 provides the requirements for payment of unused CTO time:

---

[1]On the Official Grievance Form, AFSCME argues that "[t]he Employer policy book states that CTO is paid out upon layoff" and "There is nothing in the union contract that is [a] direct violation of that employer policy; therefore the employer should be paying out CTO as requested and according to their policy." The Court construes this argument as moot because AFSCME admitted in its supplemental brief that "The Union Contract governs the rights these Employees have to CTO time, and how much."

> Employees leaving the Hospital's service who have worked at least 1,040 regular hours shall be paid for all unused CTO time, provided they give the Hospital at least a two week notice and the employee works all scheduled days in the final two weeks.

There is a separate section of the CBA—Section 10.5—that expressly addresses layoffs and recalls. Section 10.5 does not reference or require payout of unused CTO for laid-off employees. But it does require, among other things, that *the employer* provide two weeks advance notice *to employees* to be laid off, unless emergency circumstances exist. At issue here are layoff notices certain Hospital employees received on November 15, 2024.

## III. APPLICABLE LAW AND ANALYSIS

### *A. Does the CBA Require an Arbitrator to Determine Whether Laid-Off Employees are Entitled to Payment of Accrued, Unused Banked CTO?*

As a threshold matter, the Court must first determine whether the CBA requires an arbitrator–as opposed to this Court–to determine whether laid-off employees are entitled to payment of accrued, unused banked CTO.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L. Ed. 2d 1409 (1960). This issue of contract interpretation is

properly decided by the Court. *S. Cent. Power Co. v. Int'l Bhd. of Elec. Workers, Local Union 2359*, 186 F.3d 733, 738 (6th Cir. 1999). The party seeking arbitration has the burden to prove the parties entered a contract to arbitrate. *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 404 (6th Cir. 2025).

The last CBA between Debtor and AFSCME—which expired in 2011—allowed the parties to submit to arbitration any dispute, claim, or complaint that arose under and during the term of the CBA and that involved the interpretation and application of the CBA:

> 8.1 The purpose of this procedure is to serve as a means for the peaceful settlement and adjustment of all disputes, claims, or complaints *arising during the term of this agreement* involving a grievance as hereinafter defined.
>
> 8.2 *A grievance is a dispute, claim or complaint arising during the term of this Agreement and involving the interpretation and application of this Agreement*. A grievance shall be recognized and processed only if based on facts or events which have occurred or which have become known to the employee within fourteen (14) calendar days prior to the presentation of the grievance, except in the case of a suspension or discharge as referred to in Article 15, Section 15.4 and except as provided in Article 14.8. Wherever it is used herein, the term "days" shall mean calendar days, and shall exclude Saturdays, Sundays, and holidays.
>
> 8.4.4.4 The arbitrator shall have no power to establish or modify job classifications, or to establish wage rates or scales, rates on new jobs, or to change any existing wage rate, work schedules or assignments. The arbitrator shall have

> no power to substitute his/her discretion for the Hospital's discretion in cases where the Hospital is given sole discretion to act by this Agreement, or by any supplement or amendment thereto. *The arbitrator shall have the power only to rule on matters arising under and during the term of this Agreement.* In the event the arbitrator decides he has no power to decide or rule on an issue, the matter shall be referred back to the parties without decision or recommendation of its merits. *The arbitrator shall have no power to arbitrate any matters which arise after the contract expires* where that Agreement has not been formally terminated.

(Emphasis added). The CBA indicates that it was effective from September 16, 2009, until September 15, 2011. No successor agreement exists. Because the grievances at issue did not arise until *after* the CBA expired, the Court finds there is no right to arbitration, and it may determine whether laid-off employees are entitled to payment of unpaid, accrued banked CTO.[2]

### *B. Are Laid Off Employees Entitled to Payment of Unpaid, Accrued Banked CTO Under the CBA?*

The next question before the Court is straightforward: are laid off employees entitled to payment of unpaid, accrued banked CTO under the CBA? If the answer to this question is "yes," AFSCME's proof of claim number 9 will be allowed and paid according to the terms of the confirmed plan; if "no,"

[2]The Court also adopts the uncontested arguments in the Debtor's August 27, 2026, supplemental brief.

AFSCME's proof of claim will be disallowed. "When a claimant files a properly supported proof of claim, a presumption in favor of its validity arises. Generally, the burden of proof then shifts to the objecting party to produce evidence to rebut the claimant's *prima facie* case." *In re Hollars*, 198 B.R. 270, 271 (Bankr. S.D. Ohio 1996).

"Contracts [are interpreted] according to their plain meaning, in an ordinary and proper sense. That means we do not look at extrinsic evidence unless the contract is ambiguous." *Watkins v. Honeywell Int'l Inc.*, 875 F.3d 321, 323 (6th Cir. 2017) (citation omitted). This precludes the Court's consideration of past practice or custom to interpret a provision of the CBA that is clear and unambiguous. *Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 601 (6th Cir. 1997).

A term is ambiguous if it has "two competing interpretations, both of which are fairly plausible[.]" *CNH Indus. N.V. v. Reese*, 583 U.S. 133, 138, 138 S.Ct. 761, 765, 200 L. Ed. 2d 1 (2018). The Court agrees with Debtor that section 22.3.7 of the CBA is unambiguous and must be enforced according to its terms. *See Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003) ("If the language of the contract is unambiguous, we construe and enforce the contract as written."). Giving effect to every word, phrase, and clause

in this section and avoiding anything that would render any part of the contract surplusage or nugatory, *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.3d 447, 468 (Mich. 2003), the Court finds there are four statements—all of which must be true—for employees to receive payment of unused CTO:

1. Employees leave the Hospital's service
2. Employees have worked at least 1,040 regular hours
3. Employees give the Hospital at least a two week notice; and
4. Employees work all scheduled days in the final two weeks.

The first and second statements relate to eligibility and could be true of laid off employees. However, the third and fourth statements are preceded by the words "provided they [the employees]." That is, if the first two statements are true employees *must* be paid for unused CTO *provided they* give the Hospital at least a two week notice and work all scheduled days in the final two weeks. Cambridge Dictionary defines "provided (that)" to mean "if; only if." *See also Corporate Sys. Resources v. Washington Metro. Area Transit Authority*, 31 F. Supp. 3d 124, 136 (D.C. 2014) ("[W]ords and phrases such as 'if' and 'provided that,' qualifying a promise, are commonly used to indicate that the duty of the promisor has expressly

been made conditional.").[3] In other words, employees must be paid for unused time if, or only if, they give notice and work the scheduled days during the notice period. The third and fourth statements are phrased in the conjunctive, which means these statements must be read together. Employees cannot satisfy the fourth statement—the requirement that they work all scheduled days in the final two weeks of their employment—unless *the employee* gives the Hospital at least a two week notice. These are conditions precedent to payment of unused CTO that cannot be true for laid off (or fired) employees. There is no other plausible interpretation.

The problem with AFSCME's reading is there is nothing that provides an exception to the requirement that *the employees* must provide a two week notice. *See Slam Dunk I, LLC v. Conn. Gen. Life Ins. Co.*, 853 F. App'x 451, 454 (11th Cir. 2021) (A basic principle of contract interpretation is that "courts do not add words to a contract"). Laid off employees cannot provide notice, for they know not the date or hour of their layoff, which is in the employer's exclusive knowledge until shared with employees through their union representatives. Similarly, fired employees can't forecast the precise date and time of their

[3] Provided (that), CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/provided-that?q=provided+%28that%29 (last visited July 27, 2026).

discharge. Only employees who voluntarily leave can provide two weeks notice. Laid off employees receive—not give—notice. This requirement unequivocally applies *only* to employees who leave voluntarily.

AFSCME insists an arbitrator is necessary for the fact-finding component and to resolve a grievance beyond the mere language of the contract. Based on the Court's finding that there is no right to arbitrate and the CBA is unambiguous, there is no need to go beyond the language contained in the contract itself through arbitration or an evidentiary hearing.

## IV. CONCLUSION

For the reasons stated above, the Court finds Debtor satisfied its burden of proof and rebutted the presumption that AFSCME's proof of claim is valid. Proof of claim number 9 is **DISALLOWED**.

**IT IS ORDERED**.

**Signed on September 18, 2026**

**/s/ Mark A. Randon**

**Mark A. Randon**
**United States Bankruptcy Judge**